UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAIN CURTIS-SHANLEY,<br>Plaintiff,<br>v.<br>DIGNITY HEALTH,<br>Defendant. | No. 2:26-cv-1820 DJC AC (PS)<br><br><u>ORDER and</u><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). This case was removed from San Juaquin County Superior Court. ECF No. 1. Plaintiff subsequently filed the operative Third Amended Complaint. ECF No. 11. Defendant filed a motion to dismiss (ECF No. 17) and a request for judicial notice (ECF No. 15-1). Plaintiff has opposed the motion (ECF No. 19) and filed a request for judicial notice (ECF No. 21). Defendant filed a reply in support of the motion to dismiss. ECF No. 20. For the reasons set forth below the undersigned recommends defendant's motion to dismiss be GRANTED and the complaint be dismissed without leave to amend.

## I. Background

A. <u>The Third Amended Complaint</u>

Plaintiff Iain Curtis-Shanley is a medical school graduate who is suing defendant Dignity Health for alleged violations of law related to his unsuccessful applications to gain admission into

Dignity's first-year medical residency program. ECF No. 11 ("TAC") at 7. Plaintiff is a white, heterosexual, male medical school graduate who applied to Dignity's medical residency program in 2025. Id. at 18. Dignity did not offer plaintiff a position in its program. Id.

To obtain a medical license, medical school graduates must complete an accredited residency program. Id. at 7. Medical residency programs recruit prospective residents annually through a process known as the "The Match," which is facilitated by the Electronic Residency Application Service ("ERAS"); match results are released every March. Id. If selected, a medical graduate begins work as a "resident" in July; if not selected, the graduate must wait until the next September to re-apply for the yearly match. Id. Plaintiff claims that Dignity did not accept him into its residency program due to his race and gender. Id. at 8.

Plaintiff alleges defendant has "engaged in mathematically-demonstratable discriminatory hiring practices against Whites[.]" Id. at 8. Plaintiff contends such discrimination is apparent from the application of statistical tests used to evaluate the presence of unlawful discrimination, including "80% hiring rule," the Hazelwood test described in Hazelwood School District v. United States, 433 U.S. 299 (1977), Fisher's Exact Test ("FET"), and the Fisher Irwin Test ("FIT"). Id. Plaintiff contends that statistical disparities make clear that there is a direct causal link between defendants hiring policies and the harm plaintiff suffered, noting that in the 2025 cycle, the 12-person cohort included zero White males. Id. at 10-12.

Plaintiff sues for a (1) disparate impact volition of Cal. Gov. Code § 12940 and 42 U.S.C. § 1981 and § 1983; (2) disparate treatment in violation of Cal. Gov. Code § 12940 and 42 U.S.C. § 1981 and § 1983; (3) violation of the California Fair Employment and Housing Act; and (4) civil rights violations pursuant to 42 U.S.C. § 1981 and § 1983. Id. at 15-20. Plaintiff asks the court for monetary damages and to compel defendant "to hire Whites, White Males, etc., according to the statistically expected amount, and not simply the minimum to avoid being legally liable, which would be obeying the letter but ignoring the spirit of the law." Id. at. 28.

B. Motion to Dismiss

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, asserting in part that plaintiff's analysis of the statistical data

fundamentally flawed. ECF No. 7 at 6. Defendant also asserts plaintiff is judicially estopped from claiming that Dignity did not offer him a spot in its residency program due to his gender or his race because in 2024 bankruptcy filings, plaintiff admitted under oath that the reason he has not been accepted into any residency program is because he attended medical school in the Caribbean, failed to match in his initial cycle, and was "beyond consideration of many programs at this point" due to the length of time that has passed between his medical school graduation date and his residency program applications. Id.

C. Judicial Notice

Rule 201(b) of the Federal Rules of Evidence authorizes the court to take judicial notice of matters "not subject to reasonable dispute" because the matters are either: (1) "generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b). Here, defendant seeks judicial notice of nine public documents which plaintiff filed in the California state and United States federal courts: (1) Third Amended Complaint for Damages, Curtis-Shanley v. Dignity Health, Case No. 2:56-cv-01820-DJC-AC (Exhibit 1); (2) Petition for Bankruptcy United States Bankruptcy Court, Southern District of New York, Case No. 23-22314-shl, styled In Re Iain Curtis-Shanley (Exhibit 2); (3) Adversary Complaint filed by Iain Curtis Shanley in his bankruptcy matter, Shanley v. Department of Education, et al., Case No. 23-07020-kyp (Exhibit 3); (4) Attestation of Iain Shanley-Curtis in Support of Request for Stipulation Conceding Dischargeability of Student Loans, filed in support of plaintiff's Adversary Complaint (Exhibit 4); (5) Stipulation and Signed Order discharging plaintiff's educational loan debt owed to Navient Solutions, filed in the adversarial proceeding (Case No. 23-07020-kyp)(Exhibit 5); and (6) Bankruptcy Court's Order discharging plaintiff's debt and closing plaintiff's bankruptcy matter (Exhibit 6). ECF No. 15-1 at 2. Because each of these documents is a public record, the court grants the request and takes judicial notice.

Plaintiff asks the court to take judicial notice of (1) a screenshot of an email sent from the chambers of Hon. Catherine Jeang; (2) a copy of an unfiled and unsigned document titled "Tentative Civil Minutes – General" prepared for the case Iain Curtis-Shanley v. Charles R. Drew

University of Medicine and Science, Case No. 2:26-cv-54814; (3) a series of screenshots depicting a recent set of email from defense counsel Caroline Stonehouse. ECF Nos. 21 and 21-1. The court has reviewed these records, and finds that none are the proper subject of judicial notice. Notably, a final order has been issued in the Curtis-Shanley v. Drew University case, which substantively conflicts with the "Tentative Civil Minutes" submitted by plaintiff. Iain Curtis-Shanley v. Charles R Drew Univ. of Med. & Sci., No. CV 26-05814-KK, 2026 WL 2448320, at *1 (C.D. Cal. Aug. 20, 2026). The final order controls. Plaintiff's motion for judicial notice (ECF No. 21) is accordingly DENIED.

## II. Analysis

### A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most

favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Disparate Impact Discrimination (Cal. Gov. Code §12940; 42 U.S.C. §1981, §1983)

Plaintiff fails to state a disparate impact claim. First, neither of the federal statutes on which plaintiff relies can support a disparate impact theory of liability. See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est., 470 F.3d 827, 839 (9th Cir. 2006) (§ 1981 "does not permit claims of disparate impact"); Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (§ 1983 equal protection claim requires intentional discrimination). Disparate impact claims are cognizable under FEHA, Mahler v. Jud. Council of Cal., 67 Cal. App. 5th 82, 112 (2021), but plaintiff's allegations are patently insufficient to state such a claim.

"To establish a disparate impact claim, a plaintiff need not prove intent to discriminate, but must prove that 'regardless of motive, a *facially neutral* employer practice or policy, bearing no manifest relationship to job requirements, *in fact* had a disproportionate adverse effect on

members of the protected class.'" Mahler, 67 Cal. App. 5th at 112 (citation omitted) (emphasis in original). It is accordingly essential that a plaintiff demonstrate "the occurrence of certain outwardly neutral employment practices." Stockwell v. City & County of San Francisco, 749 F.3d 1107, 1114 (9th Cir. 2014). "It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, 544 U.S. 228, 241 (2005) (internal citation omitted); see also Freyd v. Univ. of Or., 990 F.3d 1211, 1224 (9th Cir. 2021) (plaintiffs generally cannot attack an overall decision making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact).

Moreover, a plaintiff must demonstrate "a significantly adverse or disproportionate impact on persons of a particular [protected class] produced by the employer's facially neutral acts or practices." Stockwell, 749 F.3d at 1114; see also Bolden-Hardge v. Off. of Cal. State Controller, 63 F.4th 1215, 1227 (9th Cir. 2023) (plaintiff must show a causal relationship between the challenged practices or criteria and the disparate impact). "This 'robust causality' requirement is necessary to ensure that 'racial imbalance ... does not, without more, establish a prima facie case of disparate impact.'" Patel v. City of Stanton, No. 24-cv-00780-CAS-DFMx, 2024 WL 3952162, at *12 (C.D. Cal. Aug. 26, 2024) (internal citation omitted).

Here, plaintiff has identified neither a specific "outwardly neutral employment practice," Stockwell, 749 F.3d at 1114, nor "the particular element or practice within the process that causes an adverse impact," Freyd, 990 F.3d at 1224 (citation modified). The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1008 (9th Cir. 2018). The complaint before the court fails to identify any specific hiring practice of the defendant, let alone one that could plausibly relate to a disparate impact on the hiring of members of a protected class. The bald allegation that "defendant maintains hiring policies which are pretended to be neutral but have a significant adverse impact upon White applicants" is not

sufficient. Such allegations merely "point to a generalized policy" ant thus fail to meet the pleading standard for disparate impact claims. Smith, 544 U.S. at 241. Because plaintiff has failed to identify a hiring practice at issue, let alone a causal relationship between that practice and the supposed disparate impact, the TAC fails to state a claim for disparate impact.

C. Disparate Treatment Discrimination (Cal. Gov. Code § 12940; 42 U.S.C. §§ 1981, 1983)

A disparate treatment claim of discrimination requires that plaintiff establish: (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). A "plaintiff must prove intentional discrimination to make out a discrimination claim using a disparate treatment theory." Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987). Here, plaintiff fails to state a claim.

1. Plaintiff is Judicially Estopped form Asserting He Was Qualified

Plaintiff is judicially estopped from asserting that Dignity failed to hire him due to his race or gender, because he has taken the position in other litigation that residency programs such as Dignity's have not accepted him because he attended a Caribbean medical school and because he rapidly failed to match in prior match cycles. Under the doctrine of judicial estoppel, where a party assumes a certain position in legal proceedings and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. New Hampshire v. Maine, 532 U.S. 742, 742-743 (2001). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. The application of judicial estoppel is an equitable doctrine invoked at the court's discretion to uphold the integrity of the judicial process, and while there is no strict formula used to determine if judicial estoppel applies, courts routinely consider several factors:

////

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. at 743 (internal citations omitted).

All three factors apply here with respect to plaintiff's bankruptcy case. On April 4, 2023, plaintiff filed a Petition for Bankruptcy United States Bankruptcy Court, Southern District of New York, Case No. 23-22314-shl, styled In Re Iain Curtis-Shanley. ECF No. 15-3. The Adversary Complaint filed by plaintiff in his bankruptcy matter, Shanley v. Department of Education, et al., Case No. 23-07020-kyp, was filed on May 5, 2023. ECF No. 15-4. In the Adversary Complaint, plaintiff alleged that after failing to get accepted into an American medical school he enrolled in a Caribbean medical school, which "misrepresented the utility and market value of their degree and failed to adequately inform their prospective and enrolled students of the difficulty of graduates of Caribbean medical schools in attaining residencies, as most American medical programs will automatically reject such applicants." ECF No. 15-4 at 4. Plaintiff further alleged that, as of 2003, he had participated in three residency Match cycles over three years and failed on each cycle to receive an offer. Id. Plaintiff stated that "[w]ith 3 failed application cycles on file, it is almost impossible for the [plaintiff] to secure a position in a medical residency and thus gain employment as a doctor." Id. In his Attestation in support of his request to have his student loans discharged, plaintiff wrote that "[w]ith each unsuccessful application cycle, it becomes increasingly unlikely for a medical graduate to ever secure a position. It is very unlikely that I will ever be able to work as a doctor at this point." RJN Ex. 4 at ¶ 32. Plaintiff's arguments were successful: student loan debt owed to Navient Solutions, LLC was discharged. ECF No. 15-6 at 3.

Now, two years later and after plaintiff received a discharge of his student loans based at least in part on the theory that his medical school misrepresented the attractiveness of his degree to medical residency programs, plaintiff alleges that although he was highly qualified, Dignity

excluded him from its program because he is a heterosexual white male. ECF No. 11 at 8. This position plainly contradicts the position he took, and benefited from, in his bankruptcy proceeding. Plaintiff has stated in court records that residency programs, such as Dignity's, would not accept him because of his Caribbean medical degree and because of his multiple failed Match rounds; accordingly, plaintiff is judicially estopped from asserting he was qualified to be accepted into Dignity's residency program.

2. Plaintiff Does Not Allege Discriminatory Intent

As a secondary reason this claim fails, plaintiff fails to plausibly allege discriminatory intent. An essential element of a disparate treatment claim is discriminatory intent, or that the employer treated the plaintiff less favorably because of a protected trait. Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012). Statistical evidence may sometimes be used to prove discriminatory motive in a disparate treatment case but "such cases are rare." Gay v. Waiters' & Dairy Launchmen's Union, Loc. No. 30, 694 F.2d 531, 552 (9th Cir. 1982) ("Absent a 'stark' pattern, 'impact alone is not determinative, and the [c]ourt must look to other evidence."). To establish a prima face of disparate treatment based solely on statistical evidence, as plaintiff attempts to do here, the plaintiff must produce statistics showing, "a clear pattern, unexplainable on grounds other than race." Id. (quoting Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266 (1977)).

Plaintiff offers only broad conclusory statements of discriminatory intent based on unsupported statistical data. Plaintiff offers no evidence of Dignity's *intent*, or any specific facts supporting an inference that Dignity considered plaintiff's race or gender at all. Instead, he offers a conclusion, unsupported by competent facts, that, "mathematically demonstratable discriminatory hiring practices against Whites" gives "rise to an inference of discrimination." ECF No. 17. Plaintiff alleges no facts, other than a questionable analysis of unsubstantiated statistical data showing that more non-white than whites candidates were hired in the last several residency rounds. Even assuming the truth of the allegation that most successful residency candidates were not white, such a fact does not show *intent* to discriminate against white applicants. This claim should be dismissed without leave to amend.

D. Violation of California Government Code § 12940 *et seq.*

California Government Code Section 12940 ("FEHA") makes it unlawful for an employer to refuse to hire a person because of a protected characteristic. To state a prima facie case of discrimination under FEHA, a plaintiff must show that: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive." See Chisolm v. 7-Eleven, Inc., 383 F. Supp. 1032, 1059 (S.D. Cal. 2019) (citation omitted). Plaintiff's claim fails for the same reasons set forth above: he cannot plausibly allege that he was qualified for the residency position and is judicially estopped from doing so, and he fails to identify any discriminatory motive. This claim must likewise be dismissed without leave to amend.

E. Third and Fourth Causes of Action (42 U.S.C. §§ 1983, 1981)

Plaintiff identifies separate causes of action for violations of Sections 1981 and 1983, but both are baseless. Section 1981 creates a federal cause of action for individuals claiming intentional racial discrimination in the formation of contracts, including employment contracts. See Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003). To establish a prima facie case of race discrimination for failure to promote or to hire, plaintiff must show that: "(1) [he] is a member of a protected group, (2) there was a specific position for which [he] applied, (3) [he] was qualified for that position, and (4) [the defendant] rejected [his] application under circumstances that give rise to an inference of discrimination." Henry v. Vaughn Industries, LLC, 450 F. Supp. 3d 671, 679 (E.D. Cal. 2020). As explained above, plaintiff cannot plausibly allege that he was qualified for Dignity's residency program in light of the earlier positions he has taken in court on the matter.

Section 1983 creates a damages remedy against state officials for the violation of a person's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 49 (1988). Plaintiff does not assert any claims against any state official or other person who could be deemed to have acted under color of state law. See Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (private actors can be liable under § 1983 only for exercises of state power which are attributable to the

government). Accordingly, plaintiff's putative § 1983 claims fail as a matter of law. These claims must be dismissed without leave to amend.

### III. Leave to Amend Is Not Appropriate

Leave to amend is not appropriate in this case. Ordinarily, pro se litigants are granted liberal leave to amend. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). Here, given the defects described above, the undersigned finds that leave to amend would be futile. Moreover, this case is part of a series of cases in which plaintiff asserts the same claims against various medical residency programs that have rejected him. As recognized by the court in plaintiff's case against Drew University, "In each of those cases, the operative complaints appear to similarly fail to identify any disputed hiring practice . . . Rather, it appears Plaintiff has merely leveled the same vague and conclusory claims of discrimination against any defendant who failed to hire him." Curtis-Shanely, 26-cv-05814-KK, 2026 WL 2448320, at *4 (C.D. Cal. Aug. 20, 2026).[1] While each case must of course be evaluated individually, the fact that plaintiff is bringing nearly identical claims against various programs, as well as the content of the complaint at issue here, indicates frivolity. See Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057, 1064 (9th Cir. 2014). Accordingly, leave to amend should not be permitted.

### IV. Pro Se Plaintiff's Summary

It is recommended that your case be dismissed. The facts that you allege do not support your legal claims. Also, you are barred from contradicting the position you took in bankruptcy proceedings that you couldn't get a residency position because of the medical school you

---

[1] Citing Curtis-Shanley v. County of San Bernardino, Dkt. 58, Third Amended Complaint ¶ 56, No. EDCV 26-02336-KK-ACCVx (C.D. Cal. Aug. 9, 2026) (basing claims on the defendant's unspecified 'diversity, equity, and inclusion' policies); Curtis-Shanley v. Eisenhower Med. Ctr., Dkt. 1-2, Ex. B, First Amended Complaint ¶ 38, No. EDCV 26-03386-KK-ACCVx (C.D. Cal. June 18, 2026) (failing to identify the "hiring policies which are pretended to be neutral but have a significant adverse impact"); Curtis-Shanley v. Dignity Health, Dkt. 13, First Amended Complaint ¶ 38, No. CV 26-07255-KK-ACCVx (C.D. Cal. July 22, 2026) (same); Curtis-Shanley v. Kaiser Found. Hosps., Dkt. 1-1, Ex. A, Complaint ¶ 38, No. CV 26-07801-KK-ACCVx (C.D. Cal. July 16, 2026) (same).

attended. If you disagree with this recommendation, you may file objections within 21 days. The District Judge will make the final decision.

### V. Conclusion

Accordingly, plaintiff's motion for judicial notice (ECF No. 21) is DENIED.

Further, the undersigned recommends that the motion to dismiss (ECF No. 17) be GRANTED and that this case be dismissed without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 19, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE